**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phillip Zimmerman, | No. CV-19-00575-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Phillip Zimmerman brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises three issues on appeal: 1) the Commissioner erred by assigning greater weight to the medical expert's opinion over the treating and examining physician opinions; 2) the Commissioner erred by finding that Plaintiff's substance abuse was a material contributing factor to his disability; and 3) the Commissioner erred in determining that additional evidence submitted by Plaintiff did not show a reasonable probability that it would change the outcome of the ALJ's decision. (Doc. 18).

Before the Court are Plaintiff's Opening Brief and Defendant's Response. (Docs. 18 and 19). Plaintiff did not file a reply. The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that the Commissioner's decision should be affirmed.

. . .

## I.     Procedural History

Plaintiff filed an application for Supplemental Security Income on September 22, 2014. (Administrative Record ("AR") 209). Plaintiff alleged disability beginning on May 28, 2013 based on major depressive disorder, anxiety disorder, PTSD, sleep disorder/sleep disturbances, chronic lumbar back and neck pain, post-surgery pain in right shoulder and right ankle, migraines, and plantar fasciitis. *Id*. Plaintiff's application was denied upon initial review (AR 208) and on reconsideration (AR 223). Hearings were held on July 20, 2017, December 7, 2017, and May 8, 2018 (AR 110, 159, 192), after which ALJ George Reyes found, at Step Five, that Plaintiff was not disabled because he was capable of making an adjustment to other work existing in significant numbers in the national economy. (AR 36–38). On October 10, 2019 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

## II.    Factual History[1]

Plaintiff was born on October 18, 1984, making him 28 years old at the AOD of his disability. (AR 209). He has a 12th grade education, served in the army, and has past work as a cook and general manager in fast food. (AR 391).

### A.     Medical Testimony

#### i.    Southern Arizona Veterans Affairs Health Care System

The record documents Plaintiff's treatment at the VA from 2012 through 2018, including a number of missed appointments and unsuccessful attempts to reach Plaintiff via phone and mail.

Urine screens on February 26, April 16, July 25, and October 22, 2013 were positive for opiates and oxycodone. (AR 536).

An April 1, 2013 psychiatric consult request states that Plaintiff needed to be seen as soon as possible as medication was not helping and Plaintiff had a recent suicide attempt and was cutting himself. (AR 581).

---

[1] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

At an April 12, 2013 psychiatric evaluation, Dr. Prickett noted that Plaintiff had a history of depression, cutting, medication and treatment noncompliance, anxiety/panic disorder, and chronic pain. (AR 893). Plaintiff stated his previous psychiatric care at the VA ended in 2011 because "no one followed up with him"; the record documented 7 no-show appointments in 2011 with multiple attempts to contact Plaintiff by phone. Plaintiff reported one month of worsening depression with no clear etiology and felt worthless, had poor concentration, and decreased appetite. (AR 894). In contrast to generalized depressive symptoms, Plaintiff  said his mood was "on top of the world." He was inconsistent with chronology of symptoms and reported one month of manic symptoms, including 40 minutes of sleep per night (later changed to 1–2 hours) without feeling tired, euphoria, racing thoughts, and increased activity. On exam Plaintiff's presentation was "markedly incongruent with his endorsed symptoms," and he had obvious psychomotor slowing, mumbled his words, and appeared sedated. Plaintiff admitted to taking 10 Percocet per day for pain over the past year instead of his prescribed three times per day dose and drinking 3 shots of tequila every night for the past month, and denied illicit substance use. Plaintiff stated he was taking his psychiatric medications and that they were helping. On exam his affect was dysphoric, sedated, and incongruent with mood, thought processes and content were normal, and insight and judgment were poor. (AR 896). Dr. Prickett's impression was that Plaintiff was a poor historian and was vague and inconsistent with his responses, and his presentation on exam was inconsistent with his endorsed symptoms. (AR 897). Plaintiff's primary issue seemed to stem from his substance abuse, included marked abuse of his prescribed Percocet and drinking. Plaintiff described his future plans as obtaining full disability in 4 years and then going to the gym every day after weaning himself off pain medication. Plaintiff declined psychotherapy and substance abuse treatment and attempted to normalize his opiate and alcohol use, and appeared closed to other modalities of treatment other than medication. The Axis I diagnosis was depressive disorder NOS, r/o substance induced mood disorder, r/o major depressive disorder, anxiety disorder NOS, r/o panic disorder, r/o generalized anxiety disorder, nicotine dependence, opiate dependence,

and r/o PTSD; Axis II cluster B traits (personality disturbance); and GAF score of 55.

At a psychiatric assessment on April 24, 2013 Plaintiff reported depression since the end of his deployment in 2009 with minimal bouts of happiness, with symptoms worse over the past month due to his divorce. (AR 870). He slept 1–2 hours a night without medication, had occasional nightmares about the military, and his appetite was "all over the place." He couldn't concentrate, had no energy, and had anxiety and panic attacks. (AR 871). Plaintiff reported rarely drinking and denied illegal substance use. (AR 872). On exam he was unkempt and drowsy appearing, restless, and had depressed/restricted affect congruent with mood. (AR 873). Thought processes and content were normal, memory intact, and attention, concentration, insight, and judgment good. The diagnosis was major depressive disorder recurrent and severe w/o psychotic symptoms, r/o dysthymia versus adjustment disorder—mixed mood, and PTSD improving. (AR 874).

On May 1, 2013 Plaintiff reported a slight improvement in his mood with increase in duloxetine, but still depressed and anxious, and poor focus and concentration at work. (AR 867). He felt his job was looking for someone to replace him and planned to submit a claim for 100% service connection because he felt he could not continue to work. Plaintiff had slightly slurred speech and said it was due to little sleep.

On May 15, 2013 Plaintiff reported fewer suicidal thoughts. (AR 853). He was only sleeping 3 hours per night due to chronic pain, but the increase in duloxetine was helpful for pain and mood. Plaintiff stated he never received the trazadone prescription that was mailed to his house, but the psychiatrist confirmed it was delivered. On exam Plaintiff had moderately depressed mood with congruent affect, goal-oriented thought processes, and fairly good insight.

On October 9, 2013 Plaintiff stated he believed chronic pain led to most of his depression and severe pain kept him up for days straight. (AR 759). He had low motivation, energy, and appetite, and was anxious, easily startled, and irritable. He reported taking duloxetine as prescribed and doubling his dose of trazadone, but it was still ineffective. Plaintiff denied use of alcohol or illicit drugs. On exam his mood was depressed and blah,

affect flat, and speech sparse, with normal thought processes and content, and good insight. (AR 760). The assessment noted Plaintiff's depression was multifactorial and pain was a significant contributing factor; long-term alleviation of depression would be difficult without pain control. Clonazepam was started for sleep and anxiety.

A November 21, 2013 compensation and pension exam notes that Plaintiff was diagnosed with major depressive disorder with a GAF score of 65 and had occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks during periods of significant stress, or symptoms controlled by medication. (AR 748–750). Plaintiff reported depressed mood, low motivation, decreased concentration, sadness, and infrequent passive thoughts of death. (AR 752). Plaintiff denied illicit drug use. (AR 753). On exam he had flat affect and depressed mood, normal behavior and thought content, good attention, concentration, and judgment, and insight fair. (AR 753–754).

Progress notes from December 2013 state that Plaintiff had been poorly compliant with pain clinic appointments and although he reported concerns about pain management, based on his prescription refill history, he did not appear to consistently use non-opiate therapies. (AR 720).

Urine screens on February 12, March 3, September 17, and October 29, 2014 were positive for benzodiazepine, opiates, and oxycodone. (AR 534).

On February 12, 2014 Plaintiff reported depression 10/10 for the past 1.5 years and chronic passive hopeless and suicidal thoughts. (AR 688). He slept 4–5 hours per night due to chronic pain, had low energy and motivation, guilt associated with not seeing his children, and did not want to look for a job because he was too depressed. He denied drug use and was compliant with medication, but it was not effective. The assessment noted Plaintiff's records suggested narcotics abuse and possible alcohol abuse, but Plaintiff minimized both when questioned; on exam he appeared sedated and mumbled responses. (AR 691). Plaintiff was assessed to be high risk for self-harm due to prior suicide attempts, noncompliance with treatment plan (including multiple no-show attempts and overuse of

narcotics), and high possibility of substance abuse. Cymbalta was increased for pain, depression, and anxiety, and Clonazepam continued for anxiety and panic attacks.

On July 10, 2014 Plaintiff reported sleeping through most of the day and denied thoughts of harming himself or others. (AR 646). He requested therapy, recommended by his attorney, because the court would only allow supervised visitation with his daughters and would reevaluate the situation if Plaintiff complied with treatment. (AR 647). Plaintiff denied any illicit drug use.

On October 22, 2014 Plaintiff reported he had not been sleeping and was up for 3–4 days then crashed for 2–3 days. (AR 621). He had decreased motivation, low energy, anxiety, and passive suicidal ideation. Plaintiff reported medication compliance and was agreeable to adding quetiapine for mood augmentation. (AR 622).

A December 11, 2014 compensation and pension exam notes that Plaintiff was diagnosed with major depressive disorder, recurrent, unspecified, and had occupational and social impairment with reduced reliability and productivity. (AR 610–611). Plaintiff reported that he had been unemployed for a year, spent his days sleeping 10–12 hours and watching television, and had days with no appetite. (AR 612–613). When his daughters were visiting, he would play with them, take them to the park, and help bathe and care for them. (AR 613). He helped to feed his mother's horses and did some housework but was limited by back pain. On exam Plaintiff had poor hygiene, normal speech and behavior, flat affect and appeared groggy and heavily medicated, normal thought processes and content, good insight and judgment, and low energy cognitively and physically. (AR 617). The psychologist noted Plaintiff's maladaptive personality traits caused disturbances of motivation and mood, difficulty in establishing and maintaining effective relationships and adapting to stressful circumstances, impaired impulse control and judgment, and suicidal ideation. (AR 619).

On January 28, 2015 Plaintiff reported depressed mood, feeling worthless, and decreased energy, concentration, and appetite. (AR 972). He continued to stay up for several days without sleeping, then crashing and sleeping for long periods. On exam

Plaintiff appeared somewhat disheveled and tired, had depressed mood and constricted affect with some reactivity, and insight and judgment were fair to limited. (AR 973–974). Clonazepam and quetiapine were discontinued, and lamotrigine started for mood stabilization. (AR 975).

On June 24, 2015 Plaintiff was depressed secondary to chronic pain and not having unsupervised visitation with his children. (AR 1403). He had been homeless for a few months but was now living with his mother and taking his medications again. Plaintiff reported sleeping 2–12 hours per night, low to normal energy, fair concentration and focus, and denied drug use. (AR 1404).

On September 18, 2015 Plaintiff stated he was always depressed and hadn't felt normal since depression started in his mid-20s. (AR 1381). Depression was 7/10, anxiety 3/10. Plaintiff reported he felt guilty, worthless, and hopeless, energy was low, concentration ok, and appetite up and down. The assessment notes that Plaintiff was one criteria short of MDD and had anxiety around crowds. (AR 1383). He felt like he couldn't work due to his pain and refused to do therapy.

On October 23, 2015 Plaintiff stated his mood was "whatever happens, happens" and that he had no enjoyment in life. (AR 1373). He spent his days sleeping and watching tv, had low energy, and couldn't concentrate. He denied suicidal ideation but said he wouldn't tell his therapist. Plaintiff stated there was nothing keeping him around; he would want to die but he wouldn't do it because things change eventually. Plaintiff said he lost his Trazadone or his step dad stole his pills. He reported continued anxiety around crowds. The assessment notes Plaintiff continued to meet the criteria for MDD, severe without psychotic symptoms. (AR 1376). Hospitalization was recommended but Plaintiff refused and said he would go to the emergency department if he started to plan suicide.

Urine screens on June 18, 2015, October 29, 2015, February 19, 2016, and August 22, 2016 were positive for opiates, and positive for oxycodone on February 19 and August 22, 2016. (AR 1184–1185).

On April 5, 2016 Plaintiff stated that he was told by his psychiatrist at COPE that

he might be bipolar and they wanted to start him on a mood stabilizer. (AR 1282). Plaintiff endorsed depressive symptoms with increased somnolence, anhedonia, and poor memory and concentration, and complained of social phobia with difficulty interacting with others. Plaintiff reported sleeping 14 hours a day and denied substance use. On exam he was depressed and anxious with flat affect, concentration and memory were poor, and insight and judgment were fair.

Notes from April 23 and April 25, 2016 document that Plaintiff was missing appointments, not complying with treatment, and not responding to calls or letters. (AR 1278–1279).

On September 16, 2016 Plaintiff saw Dr. Honory; he was 15 minutes late and had missed his last two appointments with Dr. Honory. (AR 1242). Plaintiff reported ongoing depression, low energy, poor appetite, thoughts of hopelessness and worthlessness, and chronic insomnia. He could fall asleep for an hour with trazadone but then would wake back up; after several days he would crash and sleep for 14 hours. Plaintiff was totally exhausted and had short term memory problems and difficulties with attention, and lead a reclusive lifestyle due to anxiety and panic attacks. Plaintiff claimed that he was told at COPE that he had bipolar disorder and was to start on lithium, but he wanted a second opinion from the VA. Dr. Honory noted Plaintiff did not endorse any symptoms that would be consistent with hypomania. Plaintiff denied drug use. (AR 1243). On exam he was slightly disheveled, visibly groggy, in mild distress, had difficulty following conversation, was cooperative and pleasant, affect was restricted and despondent, recent memory was poor and remote intact, and insight, judgment, attention, and concentration were poor. (AR 1243–1244). Dr. Honory assessed recurrent major depressive disorder and anxiety NOS, and noted Plaintiff continued to have chronic symptoms of depression and anxiety that were quite debilitating. (AR 1245). Plaintiff also had a history of noncompliance and had not been seen since October 2015. Dr. Honory prescribed Seroquel in place of trazadone for depression and insomnia.

On November 3, 2016 Plaintiff had delayed responses to questions, flat affect, and

poor eye contact, and expressed interest in the methadone clinic program. (AR 1220).

On December 12, 2016 Plaintiff described his mood as horrible and appeared to be in great discomfort from back spasms. (AR 1205). He would go from happy to sleeping all the time, attributed his poor mood to ongoing stressors, and thought about suicide "all of the time." Plaintiff admitted using opioids with vague details on what or how much he was using and wanted to get into the methadone program. On exam he was disheveled, had poor eye contact, depressed mood and blunted affect, and limited insight and judgment. (AR 1206). An addendum from Dr. Honory noted Plaintiff's ongoing substance abuse likely contributed to his dysregulation of mood and sleep schedule. (AR 1207).

A December 22, 2016 admission evaluation form documents that Plaintiff used oxycodone, morphine, and heroin, and was currently injecting 1–3 grams of heroin a day. (AR 1201). Plaintiff was also currently smoking methamphetamine 3 times per week and using benzodiazepines. Plaintiff was assessed as high risk for acute withdrawal due to psychological dependence on opiates. (AR 1202). Plaintiff was admitted to the methadone program and was asked not to refill his opioid prescriptions. (AR 1203).

On January 12, 2017 Plaintiff reported he was struggling with cravings because of his depression. (AR 1356). He was interactive, had good eye contact, and thought processes logical. On January 27, 2017 Plaintiff reported he was still craving. (AR 1355). He was able to identify his feelings with his mania and depression and was interactive with logical thought processes. On February 10, 2017 Plaintiff reported he was doing well. (AR 1354).

A hospital discharge summary dated February 16, 2017 notes that Plaintiff's diagnoses on admission were depression, meth use, and heroin abuse on methadone. (AR 1121).

A February 21, 2017 note from the veteran's court documents that Plaintiff was well groomed, alert and oriented, had good eye contact, and mood was euthymic with affect congruent. (AR 1302). Plaintiff had not attended treatment as the judge requested[2] and was upset that his drug use was disclosed.

_____

[2] The court ordered Plaintiff to attend substance abuse counseling and would not accept his visits to the methadone program as a form of substance abuse treatment. (AR 1355).

At a May 4, 2017 appointment with Dr. Honory, Plaintiff reported he was not doing well and had increased stress due to financial issues and warrants for failure to appear at veteran's court. (AR 1641–1642). Plaintiff was still attending the methadone program but admitted to using IV heroin several times a month, with his last use the day before. (AR 1642). Plaintiff also admitted to not taking his psychiatric medications for the past few months, reported feeling depressed and hopeless with very poor energy and fragmented sleep, and feeling suicidal for the past few weeks. Dr. Honory suggested hospitalization to detox from heroin and stabilize on medications, but Plaintiff declined citing other responsibilities, like an upcoming disability application hearing. On exam Plaintiff appeared sedated and mildly distressed, affect was restricted and despondent, and attention, concentration, insight, and judgment were poor. (AR 1643–1644). Dr. Honory noted Plaintiff had a history of noncompliance with appointments and pharmacotherapy, and although he was in the methadone clinic, he was using IV heroin intermittently. (AR 1644). Dr. Honory recommended better medication compliance, full sobriety, and attending substance abuse counseling. (AR 1644–1645).

A May 7, 2017 urine screen was positive for amphetamine, opiates, and methadone. (AR 1460).

A May 12, 2017 hospital discharge summary states that Plaintiff reported to the emergency department with suicidal ideation. (AR 1470). On admission, he was positive for amphetamines, heroin, and methadone, and admitted to using heroin and meth the week before. He reported an increase in depression since running out of psych meds after missing a February appointment. On discharge Plaintiff reported his mood was a "180" from when he was admitted, with depression as 1/10 and only feeling depressed when thinking about his financial stressors. (AR 1494). Plaintiff reported infrequent cravings and said his sobriety plan was to attend intensive outpatient classes 3x weekly at La Frontera.

At a June 7, 2017 appointment with Dr. Honory, Plaintiff admitted he was not fully compliant with his medications after discharge from the hospital. (AR 1481). On days he takes them, his mood was fairly stable, he was not depressed, irritability was diminished,

and he could sleep better. On days he did not take them, he became more irritable and agitated and could not sleep. Plaintiff had some chronic thoughts of hopelessness and suicidal ideation, but without any intent to act on them. He had started attending La Frontera's intensive outpatient program. On exam Plaintiff's affect was restricted, thought processes logical and goal directed, and attention, concentration, insight, and judgment were improved. (AR 1482–1483). The diagnosis was recurrent major depressive disorder, unspecified anxiety disorder, and opiate use disorder. (AR 1483). Dr. Honory noted Plaintiff had a history of noncompliance with appointments and pharmacotherapy, and although he was in the methadone clinic, he was using IV heroin intermittently, but was reportedly clean and sober since his hospital discharge. Dr. Honory recommended better medication compliance, full sobriety, and attending substance abuse counseling. (AR 1484).

A June 27, 2017 methadone program discharge plan states that Plaintiff was being discharged for being AWOL, not contacting the clinic, and not dosing for 9+ days. (AR 1476).

A July 19, 2017 letter from Dr. Honory states that Plaintiff had been under his care since March 18, 2016, and that Plaintiff was recently hospitalized and in the process of reestablishing care at the VA medical center. (AR 1654). Dr. Honory stated that Plaintiff was interested in pursuing Social Security disability because he was unable to work.

On August 24, 2017 Plaintiff called wanting to restart the methadone program. (AR 1787). A September 22, 2017 note documents that Plaintiff had returned to the clinic; he was continuing to use heroin until he got a stable dose of methadone. (AR 1782). On November 13, 2017 Plaintiff was discharged from the clinic for failing to show for dosing since November 2, 2017. (AR 1776). He had been admitted to the program twice and both times continued to use and no-show for appointments. Plaintiff's urine screens showed he continued to use substances and needed a higher level of care.

On November 14, 2017 Plaintiff called requesting to come back to the methadone program. (AR 1775). At an intake appointment on November 24, 2017, Plaintiff stated he

broke up with his girlfriend and needed to get clean. (AR 1773). He reported daily IV use of heroin, smoking methamphetamines 3x weekly, and past use of benzodiazepines. At a November 27, 2017 assessment, Plaintiff's mood was anxious and irritable with congruent affect, thought processes disorganized, and judgment, impulse control, and insight were poor. (AR 1771). On December 5, 2017 Plaintiff reported not using in the past few days; on exam he was interactive with logical thought processes. (AR 1735).

A November 30, 2017 compensation and pension exam lists Plaintiff's diagnoses as opioid use disorder, severe, and substance-induced depressive disorder, moderate. (AR 1750). Plaintiff's opioid use disorder was assessed to result in marked social and occupational impairment, and his substance-induced depressive disorder to result in moderate impairment in social and occupational functioning. (AR 1750–1751). Further, his opioid use disorder was "assessed to be his primary limiting condition in regards to social and occupational impairment[,]" and his "depressive disorder [was] assessed to be secondary to his chronic substance abuse." (AR 1752). The report states that:

> Give the Veteran's pervasive history of substance abuse, it is presently difficult to establish, within a reasonable degree of clinical certainty, the presence of a depressive disorder that might be independent of his substance use without resorting to speculation. The Veteran would require a sufficient period of sobriety in order to determine the presence of an independent depressive disorder (i.e., unspecified depression, major depression).

(AR 1750–1751). The report further states that although Plaintiff did not meet DSM-5 criteria for a personality disorder, he reported "a pattern of behavior, inner experience, cognition, difficulties with impulse control, and problematic interpersonal functioning that strongly suggests the presence of maladaptive personality traits." (AR 1751).

Plaintiff reported that he stopped working in 2012 because he felt overwhelmed and had chronic pain issues, and had not sought employment because he wasn't stable, didn't have any motivation, and didn't care to try. (AR 1754). Records indicated issues with timeliness and attendance and maintaining work standards. *Id.*; *see* AR 1760–1761. Plaintiff also reported legal problems, including missing court dates and outstanding

warrants, and financial issues stemming from overpayment by the VA that resulted in payments ceasing, Plaintiff owing $4,000.00, and Plaintiff being evicted. (AR 1761). Plaintiff stated he did not drink and denied current drug use; he last used heroin the month before after first using in 2014 or 2015. (AR 1762). He was running out of his pain medications halfway through the month and would supplement with heroin, using it daily when he ran out of his prescription opioids. Plaintiff admitted seeking out providers who would prescribe him opioids and often ran out significantly prior to his refill. He also tried meth a few times with his ex-girlfriend and last used earlier in 2017.

On exam Plaintiff was calm and cooperative, evasive at times, and a vague, inconsistent historian. (AR 1763). Mood was dysthymic, thought processes and content normal, and insight and judgment fair to poor. Plaintiff noted a history of thoughts of self-harm but denied any plan or intent, and a history of self-injurious behavior but was vague in responding as to onset and last occurrence. (AR 1763–1764). He reported daily symptoms of depression including diminished motivation, activity, and appetite, anxious agitation/panic, irritability/aggression, and a "don't care" attitude. (AR 1764). He denied symptoms associated with panic, phobias, obsessions/compulsions, eating disorders, mania/hypomania, or symptoms associated with a thought disorder, and did not endorse any symptoms consistent with PTSD. (AR 1764–1765). Plaintiff denied socially engaging with friends or engaging with family but contradicted this multiple times by mentioning hanging out with friends and seeing his uncle every few days. (AR 1766).

The report concluded that Plaintiff's

> Opioid Use Disorder and associated depressive symptoms are assessed to impact his ability to function in an occupational environment markedly and in the following ways: Difficulty being reliable and consistent; difficulties completing occupational tasks; difficulties tracking; meeting deadlines to standard; difficulties focusing/concentrating; difficulties with judgment and decision making; difficulties managing impulse control; difficulties remembering new information; and difficulties coping or appropriately managing the stresses associated with a normal work environment (i.e., problem solving, increased work tempo, interpersonal issues).

(AR 1767).

A December 14, 2017 VA decision continued Plaintiff's rating for major depressive disorder with opioid use disorder as 70 percent disabling. (AR 469). This was based on: unprovoked irritability with periods of violence, depressed mood, disturbances of motivation and mood, difficulty in adapting to a work like setting, impaired judgment, anxiety, occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily), difficulty in establishing and maintaining work and social relationships, impaired impulse control, and chronic sleep impairment. (AR 471).

A February 15, 2018 note from the methadone program states that Plaintiff was continuing to gain stability on methadone. (AR 1731). On March 9, 2018 and April 12, 2018 Plaintiff was cheerful and interactive with logical thought processes. (AR 1715; 1725). On April 6, 2018 Plaintiff reported he was doing well. (AR 1717). On June 7, 2018 Plaintiff was remaining compliant with the clinic and had negative urinalysis. (AR 1694).

On April 23, 2018 Plaintiff saw Dr. Honory and said he was "up and down." (AR 1696). Dr. Honory noted that he was relatively stable psychiatrically, continued to struggle with increased psychosocial stressors, and continued to experience pain. (AR 1697). Plaintiff reported sobriety from prescription opiates for at least several months. He felt Duloxetine was helpful for his mood and Seroquel helped him fall asleep, but he still woke up intermittently. Plaintiff had some fleeting thoughts about life not being worth living but was "clearly future oriented." On exam mood was "so-so" and affect restricted, thought processes were logical and goal directed, and attention, concentration, insight, and judgment were improved. (AR 1698–1699).

A February 28, 2019 VA decision increased Plaintiff's rating for PTSD with major depressive disorder and resolved opioid use disorder from 70 percent to 100 percent disabling, effective February 20, 2019. (AR 67).

An August 16, 2019 mental medical source statement ("MSS") by Dr. Honory states that he had seen Plaintiff 5 times since 2016 for PTSD and major depressive disorder. (AR 104). Dr. Honory noted that Plaintiff had irritability, hypervigilance, flashbacks,

interrupted sleep, and poor energy and motivation, had limited response to medication, and his prognosis was guarded. Dr. Honory opined that Plaintiff was seriously limited in ability to remember work-like procedures, understand, remember, and carry out short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, respond appropriately to changes in routine, deal with normal work stress, be aware of normal hazards, set realistic goals or make plans independent of others, deal with stress of semiskilled and skilled work, adhere to basic standards of neatness and cleanliness, travel in unfamiliar places, and use public transportation. (AR 106–107). Further, Plaintiff was unable to meet competitive standards for ability to maintain attention for a 2-hour segment, maintain regular attendance and be punctual, work in coordination with or proximity to others without being distracted, complete a normal workday and workweek without interruption from psychologically based symptoms, perform at a consistent pace, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers and peers, understand, remember, and carry out detailed instructions, interact appropriately with the general public, and maintain socially appropriate behavior. Dr. Honory opined that Plaintiff would be absent from work more than 4 days per month, that his impairments were consistent with the assessed functional limitations, and that his limitations began in 2009. (AR 108–109).

A September 13, 2019 physical MSS by Dr. Hartog states that Plaintiff has PTSD, major depression, and chronic low back pain. (AR 94). Dr. Hartog indicated that Plaintiff would be off task 25% or more of the workday due to depression and PTSD, was capable of low stress work, and would be absent two days per month due to his impairments. (AR 97). The symptoms and limitations assessed applied as of September 13, 2019. (AR 98).

An October 1, 2019 addendum to Dr. Honory's MSS indicates that in the absence of substance use, Plaintiff continues to experience all limitations described in the MSS, still has the signs and symptoms described in the MSS, still has mental impairments that would cause him to be absent from work more than 4 days per month, and would be off

- 15 -

task more than 10% of the workday. (AR 93).

ii.   COPE

A 2015 intake form documents that Plaintiff reported he had no drug issues and no substance use in the past year. (AR 1053–1054). On exam Plaintiff's mood was relaxed with flat affect, his self-concept was self-assured and realistic, speech was basic and appropriate to conversation and thought content, thought processes were logical and relevant, memory was capable of retention and recall, and judgment, insight, and impulse control were good. (AR 1060–1062). The clinical summary noted Plaintiff was seeking a psych eval for court; he had depression with symptoms appearing slightly every day and manifesting as general sadness, light anger, isolation, and lack of motivation. (AR 1062). His risk assessment was low: he was receiving treatment from the VA and while he experienced depression symptoms often, he was knowledgeable about his diagnosis and how to best maintain his current status and was actively pursuing self-improvement by working out and working to gain unsupervised visitation with his children. (AR 1062–1063). The diagnosis was major depressive disorder, recurrent episode, unspecified degree, with a GAF score of 71 (indicating slight impairment if symptoms are present). (AR 1063, 1065).

At a March 24, 2016 psychiatric evaluation Plaintiff had fair concentration, flat affect, depressed mood, and good insight and judgment. (AR 1108). He reported being diagnosed with depression in 2011 when he left the military, with depression manifesting as hopelessness, suicidal thoughts, spontaneous tearfulness, hypersomnia, insomnia, sadness, isolation, and lack of joy, appetite, energy, and motivation. Plaintiff reported periods of not sleeping for 2–3 days and periods of extreme energy where he slept for only 30 minutes, then crashing and sleeping for 18 hours. He also reported increased irritability and anger, racing thoughts, impulsivity like buying cars, mood swings, paranoia, nightmares and flashbacks, suicidal thoughts, cutting, and anxiety. Plaintiff stated duloxetine was not helpful for his depression, and individual and group therapy were not helpful. He denied use of street drugs or alcohol. (AR 1109). On exam Plaintiff was

pleasant and cooperative with good eye contact, engaged well during the interview, answered all questions appropriately, and concentration was good with good judgment and insight. The diagnostic impression noted symptoms were suggestive of bipolar disorder current episode depressed and PTSD, and lithium was prescribed for mood instability.

A September 16, 2016 review summary notes that Plaintiff last reported he was taking lithium for depression, received through the VA, and that it was effective in managing his symptoms. (AR 1015). There was inconclusive information to determine his overall functioning and current progress, but Plaintiff appeared to be stabilized and reported he was doing well. (AR 1016). Plaintiff reported no issues with substance abuse or dependence, and his goal was to gain better control over his depressive symptoms and maintain his good shape. (AR 1016–1017).

Client service notes from 2015 and 2016 document multiple cancelled and no-show appointments (AR 1006–1012, 1032, 1106), and difficulty reaching Plaintiff by phone.

On September 18, 2015, April 27, 2016, and December 5, 2016, Plaintiff reported no drug use. (AR 1032).

On December 5, 2016 Plaintiff was closed from services due to lack of contact. (AR 1082).

### iii.    Dr. Ruben

On June 2, 2014 Dr. Ruben completed a MSS and noted Plaintiff's diagnoses were PTSD, depression, anxiety, migraines, degenerative joint disease, and lower back pain. (AR 979). Dr. Ruben indicated that Plaintiff's psychological conditions affected his physical conditions, and that Plaintiff would be absent from work more than 4 days per month because of his impairments. (AR 981, 983, 989). Dr. Ruben opined that Plaintiff had limited but satisfactory ability to understand, remember, and carry out short and simple instructions, and seriously limited ability to perform at a consistent pace without an unreasonable number of rest periods, understand, remember, and carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of skilled and semiskilled work, interact appropriately with the public, maintain socially

appropriate behavior, adhere to basic standards of neatness and cleanliness, travel in unfamiliar places, and use public transportation. (AR 986–987). Plaintiff was unable to meet competitive standards for ability to remember work-like procedures, maintain attention for 2-hour segments, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, work in coordination with or proximity to others, make simple work-related decisions, complete a normal workday and workweek without interruption from psychologically based symptoms, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers, respond appropriately to changes in a routine work setting, deal with normal work stress, and be aware of normal hazards. (AR 896). Dr. Ruben further opined that Plaintiff had marked functional limitations in activities of daily living, social functioning, and concentration, persistence, or pace. (AR 897). Dr. Ruben did not check the box indicating whether alcohol or substance abuse contributed to Plaintiff's mental limitations. (AR 989).

　　　　　iv.　ME

At the hearing before the ALJ on May 8, 2018, Dr. Sherman testified as a medical expert. (AR 159). Dr. Sherman noted that she had reviewed records 1F through 14F in preparation for the hearing. (AR 166). She opined that Plaintiff did not meet any listings except for when he was using IV heroin, methamphetamines, and cocaine[3] because then all the Paragraph B criteria would be marked. The ALJ noted that Plaintiff testified that he had been sober since November 2017, but that they did not have any records from that time period. Dr. Sherman agreed, noting that the records she reviewed documented used of methamphetamine, cocaine, heroin, and opiates in December 2016, benzodiazepines in January 2015, and heroin and methamphetamine in May 2017. (AR 167–168).

The ALJ asked Dr. Sherman to assume a hypothetical individual with the capacity for light level work with physical and mental limitations. (AR 168). Dr. Sherman stated that the parameters sounded reasonable and similar to what she was going to say, and

---

[3] Plaintiff testified that he never used cocaine and that there must be a mistake in the record. (AR 174–175).

further stated that Plaintiff's psychiatric problems were related to his substance use, as noted throughout the record. (AR 169). Dr. Sherman stated that the record suggested that Plaintiff did not have dramatic motivation for work, and that if he really wanted to work, he could have some contact with the public, even though he had some difficulty with anger issues. (AR 170).

Dr. Sherman testified that she did not agree with Dr. Honory's opinion at Exhibit 13F (the letter stating Plaintiff was interested in pursuing disability benefits because he was unable to work), or with Dr. Ruben's opinion, and noted Dr. Ruben had his license suspended for writing inappropriate opiate prescriptions to patients. (AR 171).

B.     ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, major joint dysfunction, depressive disorder, anxiety-related disorder, and polysubstance abuse. (AR 24). The ALJ found that Plaintiff's mental impairments met the listings for 12.04 (depressive disorders) and 12.06 (anxiety and obsessive-compulsive disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that the Paragraph A criteria were satisfied for listings 12.04 and 12.06 because Plaintiff had a substance-induced depressive disorder and anxiety disorder. The ALJ also found that the Paragraph B criteria were satisfied because, with substance abuse, Plaintiff had marked limitation in understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and in adapting or managing oneself. (AR 26); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.[4] However, the ALJ concluded that if

---

[4] Mental impairments are evaluated using the technique outlined in 20 C.F.R. § 404.1520a. The Commissioner must first evaluate the claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). If the Commissioner determines that the claimant does have a medically determinable mental impairment, the Commissioner must specify the findings that substantiate the presence of the impairment, and then rate the degree of functional limitation resulting from the impairment. *Id*. The Commissioner considers four areas of functional limitation: ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation is rated as none, mild, moderate, marked, or extreme. *Id*. The Commissioner then determines the severity of the mental impairment. 20 C.F.R. § 404.1520a(d). If the Commissioner rates the degree of limitation as "none" or "mild," the Commissioner will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation

substance abuse was stopped, Plaintiff's mental impairments would not meet or medically equal listings 12.04 or 12.06. (AR 29). Further, without substance abuse, the Paragraph B criteria would not be satisfied because Plaintiff would have only mild limitation in understanding, remembering, or applying information, and moderate limitation in interacting with others; concentration, persistence, or maintaining pace; and in adapting or managing oneself. (AR 29–30).

The ALJ gave consideration and partial weight to the VA disability rating, noting that the VA providers had the opportunity to evaluate Plaintiff's impairments and limitations and the extent to which they affected his ability to perform work-related activities, and that the assessed marked mental limitations (with substance abuse) were supported by the psychiatric expert's testimony. (AR 27). However, because Plaintiff's mental impairments were intertwined with substance abuse and medical noncompliance, the VA disability rating was given some limited weight.

The ALJ gave limited weight to Dr. Ruben's physical and mental MSS from 2014 because there were no accompanying treatment notes from 2014, and Plaintiff was being treated at the VA at that time. (AR 27).

The ALJ gave limited weight to treating psychiatrist Dr. Honory's July 2017 statement that Plaintiff was interested in pursuing DIB because he was unable to work because although the record documented Plaintiff's treating relationship with Dr. Honory, the record also documented ongoing substance abuse and treatment noncompliance. (AR 27).

The ALJ gave significant weight to psychiatric expert Dr. Sherman's opinion that Plaintiff's condition did not meet listing level severity unless he was using drugs because Dr. Sherman was a board-certified psychiatrist who was familiar with the Commissioner's regulations for evaluating disability, and because her opinion was based on clinical findings and was consistent with the record as a whole. (AR 27–28).

The ALJ gave partial weight to the state agency consultant opinions that there was

---

in the claimant's ability to do basic work activities. *Id.*

no evidence of substance abuse because at the time the assessments were made, there was no evidence of Plaintiff's polysubstance abuse available in the record. (AR 28).

The ALJ found that, if Plaintiff stopped the substance use, he would have the RFC to perform a reduced range of light work with the following limitations: occasionally climb ladders, ropes, and scaffolds; occasionally lift right upper extremity above shoulder; frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; limited to simple, routine tasks and cannot perform tasks in a fast-paced production environment such as the pace of work in a fast food restaurant; limited to only occasional interaction with supervisors and coworkers; limited to only brief, intermittent, and superficial public interaction; and can attend and concentrate in 2-hour blocks of time in an 8-hour workday with two customary 10–15 minute breaks and a 30–60 minute lunch period. (AR 30). The ALJ found that, if Plaintiff stopped the substance use, he could not perform his PRW as a fast-food manager or a first sergeant in the army. (AR 36). However, Plaintiff could perform other work such as routing clerk, mail clerk, and silver wrapper. (AR 37).

The ALJ concluded that substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use, and Plaintiff was therefore not disabled. (AR 37).

## III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not

proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d

1104, 1115 (9th Cir. 2012); *see also Stout v. Comm'r Soc. Sec. Admin*., 454 F.3d 1050,
1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to
determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In
other words, "an error is harmless so long as there remains substantial evidence supporting
the ALJ's decision and the error does not negate the validity of the ALJ's ultimate
conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not
entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how
egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135,
1138 (9th Cir. 2011).

### IV.    Discussion

Plaintiff argues that the ALJ erred by giving the ME's opinion greater weight than
the treating or examining physician opinions when the ME did not observe, treat, or
examine Plaintiff, and did not review Exhibit 16F, which documents Plaintiff's sobriety
and ongoing mental health issues. Plaintiff further alleges that the evidence does not
support the ALJ's finding that substance abuse was a contributing factor material to the
disability determination, and that the Appeals Counsel erred in determining that the
additional evidence submitted by Plaintiff would not have changed the outcome of the
ALJ's disability determination. Plaintiff states that remand for an award of benefits is
appropriate. Alternatively, Plaintiff states that the Court should find good cause for
Plaintiff's failure to submit the new evidence previously and remand for consideration of
the evidence and instruction to the ALJ to reassess Plaintiff's RFC based on all available
evidence, obtain new VE testimony and proffer a new hypothetical based on the new RFC,
and issue a new decision on Plaintiff's disability.

The Commissioner argues that the ALJ properly evaluated the medical opinion
evidence in assessing Plaintiff's RFC and that the ME's opinion was consistent with
Plaintiff's treatment record documenting a history of substance abuse with improved
mental health symptoms during periods of sobriety. The Commissioner further argues that
Plaintiff has not met his burden to show that substance abuse is not material to the disability

1    determination, and that Plaintiff has not pointed to any evidence that he was disabled when
2    not using drugs. Finally, the Commissioner contends that remand for consideration of the
3    new evidence submitted by Plaintiff is inappropriate because Dr. Honory's opinion was
4    rendered after the ALJ's decision, provides no support for the opinion that Plaintiff's
5    limitations began in 2009, and fails to explain how substance abuse affects Plaintiff's
6    limitations.

7        The Court has considered the parties' arguments and thoroughly reviewed the record
8    in this matter. For the reasons explained below, the Court finds that the ALJ's decision is
9    supported by substantial evidence of record and that remand for consideration of Plaintiff's
10    new evidence is not warranted. Accordingly, the Commissioner's decision will be
11    affirmed.

12        A.    <u>Substance Abuse Materiality</u>

13        ALJ George Reyes found that Plaintiff was under a disability but ultimately
14    concluded that Plaintiff was not disabled because substance abuse disorder was a
15    contributing factor material to the determination of disability and Plaintiff would not be
16    disabled if he stopped the substance use. (AR 22, 37). Plaintiff contends that the evidence
17    does not support the ALJ's finding because the ALJ failed to cite Plaintiff's extended
18    periods of sobriety and that Plaintiff continued to experience mental health issues even
19    during sobriety. Plaintiff further contends that, to the extent that the record is not fully
20    developed on this issue, remand is required.

21        Pursuant to 42 U.S.C. § 423(d)(2)(C), an individual is not disabled "if alcoholism
22    or drug addiction would (but for this subparagraph) be a contributing factor material to the
23    Commissioner's determination that the individual is disabled." To determine whether the
24    drug addiction or alcoholism ("DAA") is a contributing factor material to the determination
25    of disability, the ALJ determines whether the claimant's other impairments would improve
26    to the point of nondisability in the absence of the DAA. SSR 13-2p, 2013 WL 621536 at
27    *7. The Ninth Circuit has made clear that the ALJ must first conduct the five-step
28    sequential analysis without separating out the impact of DAA. *Bustamante v. Massanari*,

262 F.3d 949, 955 (9th Cir. 2001). If, and only if, the ALJ finds that the claimant is disabled and there is medical evidence of DAA, then the ALJ must evaluate whether the claimant would still be disabled if he stopped using drugs or alcohol. *Id.*; *see also Para v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007); *Hoban v. Colvin*, 2016 WL 4059200, *3 (D. Or. July 27, 2016) ("Bustamante requires a two-step process."). If the remaining limitations would not be disabling after applying the sequential evaluation a second time, then the DAA is a contributing factor material to the determination of disability and the claim is denied. 20 C.F.R. §§ 404.1535, 416.935; SSR 13-2p, 2013 WL 621536 at *4.

"[B]ecause medical science does not currently have a method for reliably predicting the improvement of a co-occurring mental disorder without substance abuse, the ALJ must rely on evidence in the case, and not exclusively on a medical expert, to ascertain the materiality of a claimant's DAA in the context of a co-occurring mental disorder." *Hoban*, 2016 WL 4059200 at *6; *see also* SSR 13-2p, 2013 WL 621536 at *9 ("To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of claimant's mental disorder.").

Here, the ALJ conducted the five-step inquiry and determined that, when considering all of Plaintiff's impairments, including those caused by DAA, Plaintiff was disabled. As required by the regulations, the ALJ then conducted the five-step inquiry a second time and determined that DAA was material to the disability finding and that Plaintiff was not disabled. The Court finds no error on this point.

The ALJ based his materiality finding on a thorough review of the treatment record, concluding that the record established improvement in symptoms and conditions when Plaintiff complied with treatment and abstained from illegal and prescription drug abuse. (AR 35). While the ALJ also gave significant weight to the ME's testimony, which included the opinion that Plaintiff's conditions did not meet listing severity in the absence of DAA, the ALJ did not rely exclusively on this testimony to make his materiality finding.

Rather, the ALJ appropriately noted instances in the record to support his findings that, in the absence of substance use, Plaintiff's limitations would not satisfy the Paragraph B criteria, and that Plaintiff's conditions improved when Plaintiff was sober and followed treatment recommendations. (AR 29, 31–35). For example, the ALJ noted that improvement was documented in a VA compensation and pension exam in late 2017. (AR 35). Plaintiff reported last using heroin the previous month and last using methamphetamine earlier in the year and denied current drug use. Plaintiff was described as pleasant and cooperative, and memory, concentration, and attention were within normal limits. The ALJ also noted Plaintiff's own statements that when he takes his psychiatric medications, his mood is fairly stable, he is not depressed, irritability is diminished, and he sleeps better. (AR 32). In addition, the ALJ noted that Plaintiff received treatment at the VA for substance-induced mood disorder, methamphetamine use disorder, and opioid use disorder, and that treatment notes documented a long history of opioid dependence, opiate abuse linked to chronic pain issues, drug-seeking behavior and doctor shopping, numerous treatment attempts, and continued substance abuse despite having interpersonal, physical, occupational, legal, and psychological problems that could be exacerbated by use. (AR 25, 31). The ALJ also noted VA employability notes from 2017 indicating that Plaintiff's opioid use disorder and associated depressive symptoms markedly impacted his ability to function in a work environment and would cause problems interacting with coworkers and the public. (AR 25–26).[5] Thus, the record reflects, and the ALJ noted, that Plaintiff's treatment providers documented drug abuse as a factor impacting Plaintiff's mental impairments and associated limitations.

The Court rejects Plaintiff's claim that the ALJ failed to note that Plaintiff continued to experience mental health symptoms during periods of sobriety. For example, the ALJ noted that in early 2018, Plaintiff had been clean from illegal prescription opiates for

---

[5] The report indicated that Plaintiff's opioid use disorder resulted in marked social and occupational impairment, and his substance-induced depressive disorder resulted in moderate impairment in social and occupational functioning. (AR 1750–1751). Further, his opioid use disorder was "assessed to be his primary limiting condition in regards to social and occupational impairment[,]" and his "depressive disorder [was] assessed to be secondary to his chronic substance abuse." (AR 1752).

several months. (AR 35). Treatment records from that time period documented that Plaintiff was relatively stable and was observed to be casual and relaxed with good eye contact, but also that Plaintiff had chronic symptoms of depression and anxiety, and stressors regarding his living situation, visitation with his children, and his disability application. (AR 35). Further, the ALJ did not find that Plaintiff had *no* mental health symptoms when he was sober; rather, the ALJ assessed that if Plaintiff stopped the substance use, Plaintiff would still have mild limitation in understanding, remembering, or applying information, and moderate limitations in concentration, persistence, or pace, interacting with others, and adapting or managing oneself. (AR 29). While these limitations did not rise to listing level and did not satisfy the Paragraph B criteria, the ALJ considered Plaintiff's mental health conditions and associated limitations in the absence of DAA and appropriately included those limitations in the RFC assessment. (AR 30).[6]

Plaintiff essentially asks the Court to reweigh the evidence more favorably to him, but Plaintiff's alternate interpretation is not enough to assign error to the ALJ's findings. "While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995); *see also Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The medical evidence presented perhaps would permit a reasonable mind to make a finding of disability. It also would permit a finding of no disability. When there is evidence sufficient to support either outcome, we must affirm the decision actually made."). The ALJ appropriately identified evidence in the treatment record documenting that DAA materially contributed to Plaintiff's conditions and limitations, and in support of the ALJ's conclusion that Plaintiff would not be disabled but for his drug abuse. *See Guerrera v. Colvin*, 2015 WL 875378 (D. Ariz. Mar. 2, 2015) (substantial evidence

---

[6] The ALJ found that Plaintiff could perform a reduced range of light work with the following non-exertional limitations: limited to simple, routine tasks and cannot perform tasks in a fast-paced production environment such as the pace of work in a fast food restaurant; limited to only occasional interaction with supervisors and coworkers; limited to only brief, intermittent, and superficial public interaction; and can attend and concentrate in 2-hour blocks of time in an 8-hour workday with two customary 10–15 minute breaks and a 30–60 minute lunch period. (AR 30).

supported DAA materiality finding where record showed claimant's mental functioning was significantly improved when sober, claimant had drug-seeking behavior and frequently tested positive for substances, and claimant admitted to hospital hopping to obtain drugs); *Strand v. Barnhart*, 2008 WL 5000119 (D. Ariz. Nov. 20, 2008) (substantial evidence supported DAA materiality finding where record illustrated history of alcohol abuse: claimant had multiple attempts at detox treatment but was not truthful about her drinking, record documented relapse, multiple physicians opined claimant would not be disabled absent alcoholism and could complete a work-week satisfactorily if she were sober, after 7 month period of sobriety claimant had no or only mild mental limitations, and failure to comply with psychiatric treatment and medication was at times related to claimant's drinking); *contra Cothrell v. Berryhill*, 742 Fed. Appx. 232, 235 (9th Cir. July 18, 2018) (ALJ's conclusion that DAA was material to disability was not supported by substantial evidence where ALJ relied on statements of non-examining doctor who stated claimant "had drug problems for a long time" based on report that claimant attended inpatient program over 20 years before AOD, doctor recognized record on nature and extent of DAA was inconsistent and vague, doctor opined that claimant had no more than mild limitation in ADL, and doctor never opined on extent of DAA or its materiality; ALJ also relied on lay witness statements, but witnesses never mentioned DAA; ALJ offered no other basis for materiality finding); *Schanzenbaker v. Colvin*, 2014 WL 943351 (E.D. Wash. Mar. 11, 2014) (ALJ erred by failing to evaluate which of claimant's limitations would remain if he stopped the substance use and instead summarily relied on medical expert's testimony that claimant would not be disabled without DAA; ALJ's determination that DAA materially contributed to disability was not supported by substantial evidence where medical expert's testimony was contradicted by treating and examining physician testimony that abstinence from DAA would not improve claimant's ability to function in the workplace). Accordingly, the Court finds no error on this point.[7]

---

[7] Because the Court finds that substantial evidence supports the ALJ's DAA materiality finding, the ALJ rejects Plaintiff's contention that, if the record is not fully developed on this issue, remand is required. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[A]n ALJ's duty to develop the record further is triggered only when there is ambiguous

B.     Evaluation of Medical Testimony

The ALJ called Dr. Sherman to testify as a psychiatric medical expert and gave her opinion significant weight. (AR 27–28). Plaintiff argues that it was error to give Dr. Sherman's opinion greater weight than the treating or examining physician opinions when Dr. Sherman did not observe, treat, or examine Plaintiff, and did not review Exhibit 16F, which Plaintiff states documents his sobriety and ongoing mental health issues.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal quotations and citations omitted). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADL. *Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical

evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* However, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Further, if the ALJ determines that the plaintiff's subjective complaints are not credible, this is a sufficient reason for discounting a physician's opinion that is based on those subjective complaints. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Lastly, the opinion of a non-examining physician cannot, by itself, be substantial evidence to reject an examining or treating physician opinion. *Lester*, 81 F.3d at 830–31.

Finally, the ALJ must evaluate medical opinions according to the requirements set out in 20 C.F.R. § 404.1527(c): (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the consistency of the opinion and the record as a whole; (4) whether the physician is a specialist; and (5) other factors that would support or contradict the opinion.

In the present case, the ALJ gave Dr. Sherman's opinion significant weight. (AR 28). Dr. Sherman testified that in preparation for the hearing, she reviewed records 1F through 14F. (AR 166). Thus, the only record that Dr. Sherman did not review was 16F, which consists of progress notes from Plaintiff's treatment at the VA from May 12, 2017 through April 11, 2018.[8] While this might be cause for concern had the ALJ relied solely on Dr. Sherman's opinion in making his DAA materiality finding, as detailed above, the ALJ properly cited to the medical evidence of record to support his conclusion that Plaintiff would not be disabled in the absence of drug abuse. Further, while Dr. Sherman's opinion did not include consideration of 16F, the ALJ did review 16F and cited to it multiple times throughout his decision. Thus, the Court finds no error on this point.

---

[8] Exhibit 16F was not available at the time of the hearing, thus Dr. Sherman was unable to review it. A June 22, 2018 letter from ALJ George Reyes to Plaintiff states that the ALJ had secured additional evidence that he proposed to enter into the record: Exhibits 16F and 20E. (AR 498).

The Court further finds that the ALJ's medical weight findings are supported by substantial evidence in the record. First, the ALJ gave limited weight to Dr. Ruben's physical and mental MSS from 2014 because there were no accompanying treatment notes from 2014, and Plaintiff was being treated at the VA at that time. (AR 27). This is a specific and legitimate reason to assign less weight to Dr. Ruben's opinion. *See Bayliss*, 427 F.3d at 1216 (ALJ need not accept an opinion that is inadequately supported by clinical findings); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion properly rejected where it was unsupported by treatment notes and offered no objective medical findings to support the existence of the claimant's alleged conditions); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Second, the ALJ gave limited weight to treating psychiatrist Dr. Honory's July 2017 statement that Plaintiff was interested in pursuing DIB because he was unable to work. (AR 27). Dr. Honory's opinion consisted of a brief letter noting that Plaintiff had been under his care since March 18, 2016, was recently hospitalized and in the process of reestablishing care at the VA, and was interested in pursuing disability benefits because he was unable to work. The ALJ may properly assign less weigh to a treating physician opinion that is brief or conclusory and not supported by the evidence of record. *See Bayliss*, 427 F.3d at 1216 ("ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings"); *Tonapetyan*, 242 F.3d at 1149 (same); 20 C.F.R. § 404.1527(c)(3). Here, the ALJ noted that although the record documented Plaintiff's treating relationship with Dr. Honory, the record also documented ongoing substance abuse and treatment noncompliance—for example, in early 2018, Dr. Honory noted that he had last seen Plaintiff in June 2017 and that Plaintiff had a history of noncompliance with scheduled appointments and pharmacotherapy. At the April 23, 2018 appointment, Dr. Honory stated that Plaintiff had been relatively stable psychiatrically.

1    Thus, the ALJ could properly assign limited weight to Dr. Honory's statement that Plaintiff

2    was pursuing DIB because he was unable to work where that opinion was brief and

3    conclusory, did not take into consideration Plaintiff's history of substance abuse and

4    treatment noncompliance, and did not even mention Plaintiff's mental health conditions or

5    associated functional and occupational limitations. *See Tonapetyan*, 242 F.3d at 1149

6    ("Although a treating physician's opinion is generally afforded the greatest weight in

7    disability cases, it is not binding on an ALJ with respect to the existence of an impairment

8    or the ultimate determination of disability."); *Edlund v. Massanari*, 253 F.3d 1152, 1156

9    (9th Cir. 2001) (It is the role of the ALJ to determine whether a claimant is "disabled"

10   within the meaning of the SSA, and that determination is based on both medical and

11   vocational components.).

12        Finally, the ALJ gave significant weight to Dr. Sherman's opinion[9] because Dr.

13   Sherman was a board-certified psychiatrist who was familiar with the Commissioner's

14   regulations for evaluating disability and because her opinion was based on clinical findings

15   and was consistent with the record as a whole. (AR 27–28). The Court finds that these are

16   valid reasons supported by substantial evidence to assign significant weight to Dr.

17   Sherman's opinion. *See* 20 C.F.R. § 404.1527(c) (factors ALJ must consider in evaluating

18   medical opinions include the evidence in support of the opinion, the consistency of the

19   opinion and the record as a whole, and whether the physician is a specialist). As the ALJ's

20   decision documents, the treatment record reflects that Plaintiff experienced symptoms

21   related to depression, anxiety, and abuse of prescription and illegal drugs. The record also

22   reflects that when Plaintiff complied with treatment recommendations, consistently took

23   his prescribed medications, and abstained from drug abuse, his conditions and symptoms

24   improved.

25        In sum, the Court finds that the ALJ provided specific and legitimate reasons to

26

27   _____

     [9] Dr. Sherman opined that Plaintiff's condition did not meet listing level severity unless he
     was using drugs, that the record indicated Plaintiff did not have dramatic motivation to
28   work but that if he was motivated, he would be able to interact socially, and that the
     parameters of the ALJ's RFC assessment were reasonable and similar to what her opinion
     would be regarding the Plaintiff's psychiatric conditions. (AR 28).

discount the treating physician opinions and did not err in assigning greater weight to the ME opinion. While the evidence before the ALJ may be subject to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("When the evidence is susceptible to more than one rational interpretation, and the [ALJ's] conclusion is one such rational interpretation, that interpretation must be upheld."). Accordingly, the Court finds no error on this point.

### C.   Additional Evidence

Following the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council. Plaintiff contends that the Appeals Council erred when it found that this additional evidence would not have changed the outcome of the ALJ's decision. Plaintiff further alleges that, at the time of his hearing before the ALJ, he was acting pro se and did not understand the importance of obtaining treating physician opinions on the materiality of DAA. Plaintiff states that Dr. Honory's opinion is relevant as the provider best suited to opine on Plaintiff's substance abuse and mental health, and further that Dr. Honory's opinion is consistent with his treatment records from the VA and supports a finding of disability. Plaintiff requests that, if the Court does not remand this matter for an award of benefits, that the Court remand for consideration of the new evidence.

Pursuant to 20 C.F.R. § 404.970(a)(5), the Appeals Council will review a case at a party's request or on its own motion when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." Further, the Appeals Council will only consider additional evidence under paragraph (a)(5) if the claimant shows good cause for not submitting the evidence previously to the ALJ. 20 C.F.R. § 404.970(b). Finally, if the claimant submits evidence that does not relate to the period on or before the date of the ALJ's decision, the Appeals Council will send a notice to the claimant explaining why it did not accept the additional evidence. 20 C.F.R. § 404.970(c).

Here, the Appeals Council found that Dr. Honory's MSS dated August 19, 2019, Dr. Honory's addendum to his MSS dated October 1, 2019, and a decision from the Department of Veteran's Affairs dated December 14, 2017 did not show a reasonable probability that it would change the outcome of the ALJ's decision. (Administrative Record ("AR") 2). The Appeals Council further found that Dr. Hartog's MSS dated September 13, 2019 and a decision from the VA dated December 14, 2019[10] did not relate to the period at issue and did not affect the decision as to whether Plaintiff was disabled on or before August 24, 2018—the date of the ALJ's unfavorable decision. *Id.*

"[I]n determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). "To be material under section 405(g), the new evidence must bear 'directly and substantially on the matter in dispute.'" *Id.* (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). Further, the claimant must "demonstrate that there is a 'reasonable probability' that the new evidence would have changed the outcome of the administrative hearing." *Id.* Finally, the claimant must demonstrate good cause for failing to produce the evidence earlier by "demonstrat[ing] that the new evidence was unavailable earlier." *Id.* at 643.

Here, Plaintiff alleges good cause for failing to submit the additional evidence previously because he was unrepresented and struggling with mental illness and homelessness, and that it was not until he obtained an attorney that he became aware of the importance of asking his treating psychiatrist for an opinion on the materiality of substance abuse. However, this does not show that the evidence was unavailable earlier, as is required to support a finding of good cause. *Mayes*, 276 F.3d at 463 (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied")). Further, following the hearing, the

---

[10] The Court notes that this date appears to be an error—the record contains a VA decision dated February 28, 2019.

ALJ held the record open to obtain updated treatment records from the VA; the ALJ obtained that evidence and sent a letter to Plaintiff stating that he proposed to enter it into the record. (AR 189; 498); *see also Tonapetyan*, 242 F.3d at 1150 ("The ALJ may discharge [his] duty [to develop the record] in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."). The ALJ also explained to Plaintiff that he could send the ALJ any additional evidence "just to be on the safe side" to make sure it was included in the record and brought to the ALJ's attention. (AR 189–190). It is the Plaintiff's burden to prove that he is disabled, and if Plaintiff wished to provide any additional information in support of his alleged limitations, he was afforded the opportunity to do so.

The Court also finds that Plaintiff has failed to show that the new evidence is material. While Plaintiff specifically argues only Dr. Honory's opinions, the Court will address each piece of evidence in turn.

First, Plaintiff has not shown a reasonable probability that Dr. Honory's MSS dated August 16, 2019 and Dr. Honory's addendum to his MSS dated October 1, 2019 would have changed the outcome of the administrative hearing. Both opinions were made one year after the ALJ's decision. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (opinions issued after the Commissioner's decision are less persuasive). The August 16, 2019 opinion indicates that the assessed limitations apply beginning in 2009; however, the first record of treatment by Dr. Honory is from 2016, and the opinion indicates that Dr. Honory had only 5 appointments with Plaintiff since 2016. (AR 104). Assuming that the assessed limitations applied during the time period that Dr. Honory actually treated Plaintiff, it appears that only one of the 5 appointments occurred during a period of sobriety, and at that appointment Dr. Honory documented that Plaintiff's symptoms had improved. (AR 1697–1698). As explained above, the ALJ's finding that Plaintiff's conditions and symptoms improved in the absence of DAA is supported by substantial evidence in the record. Further, the August 16, 2019 opinion did not mention Plaintiff's

drug abuse and treatment noncompliance, despite Dr. Honory documenting these issues in the progress notes from Plaintiff's appointments. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider."). The October 1, 2019 addendum is a check-box form indicating that the symptoms and limitations assessed in the August 16, 2019 opinion would still exist in the absence of DAA, but fails to explain how DAA affected Plaintiff's limitations. (AR 93). "An ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings[,]" *Tonapetyan*, 242 F.3d at 1149, and "the ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina*, 674 F.3d at 1111 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)) and (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not.")).

Second, Plaintiff has not shown that the VA's December 14, 2017 decision is material. That decision was based on the November 30, 2017 VA compensation and pension exam, which was included in the original record and which the ALJ cited to in his opinion.

Third, Plaintiff has not shown how Dr. Hartog's MSS dated September 13, 2019 is relevant and material when that opinion was made over one year after the ALJ's August 24, 2018 decision and did not relate to the period at issue. *See Macri*, 93 F.3d at 544. Plaintiff's date last insured is December 31, 2018; thus, Plaintiff must establish disability on or before that date to be entitled to disability insurance benefits. Further, Dr. Hartog's MSS state that it was his first visit with Plaintiff and that the limitations assessed apply starting "now." (AR 94, 98, 99, 103). Thus, it appears this opinion is wholly irrelevant to Plaintiff's claim for DIB. *See Quesada v. Colvin*, 525 F. App'x 627, 630 (9th Cir. 2013) (district court properly concluded additional evidence claimant submitted to the Appeals Council would not have changed the outcome in the case because it post-dated the ALJ's

decision and therefore was not relevant). In addition, Dr. Hartog's opinion addressed Plaintiff's physical limitations and headaches, which Plaintiff does not raise as issues on appeal.

Finally, Plaintiff fails to show that the VA's February 28, 2019 decision is relevant and material. The rating decision was made 6 months after the ALJ's decision and was effective February 20, 2019, and thus clearly did not relate to the period at issue and did not affect the decision as to whether Plaintiff was disabled on or before August 24, 2018—the date of the ALJ's unfavorable decision. *See Macri*, 93 F.3d at 544; *Quesada*, 525 F. App'x at 630.

In sum, the Court finds that Plaintiff has failed to show good cause for failure to submit the additional evidence previously and has failed to show that the evidence would have a reasonable probability of changing the outcome of the ALJ's decision. Accordingly, remand for consideration of the new evidence is not warranted. *Sullivan v. Colvin*, 588 F. App'x 725, 726–27 (9th Cir. 2014) (new evidence presented to Appeals Council did not sufficiently undermine the ALJ's decision and did not warrant remand; "While the new evidence supported Sullivan's disability allegations, substantial evidence still supported the ALJ's nondisability determination."); *see also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

## V.     Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

1    Here, the undersigned finds that the ALJ's decision is supported by substantial

2  evidence and is free from legal error.[11] Accordingly, in light of the foregoing,

3    **IT IS HEREBY ORDERED** that the decision of the Commissioner of Social

4  Security is **affirmed**. The Clerk shall enter judgment accordingly and close its file on this

5  matter.

6    Dated this 9th day of September, 2021.

7

8

9

10  Eric J. Markovich
    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24  [11] While the Court is sympathetic to Plaintiff's plight as a veteran with trauma related to
    his military service and a history of mental health issues and drug addiction, the Court may
25  only overturn the decision to deny benefits "when the ALJ's findings are based on legal
    error or are not supported by substantial evidence in the record as a whole." *Aukland*, 257
26  F.3d at 1035. The findings of the Commissioner are meant to be conclusive, and the Court
    may not substitute its judgment for that of the ALJ. 42 U.S.C. §§ 405(g), 1383(c)(3);
27  *Matney*, 981 F.2d at 1019. Thus, although the medical evidence of record may be subject
    to more than one rational interpretation, the Court finds that substantial evidence supports
28  the ALJ's decision and the Court must defer to the ALJ's conclusion. *Batson*, 359 F.3d at
    1198.